The order denying the motion for a new trial on the ground of newly-discovered evidence should be affirmed, with $10 costs and disbursements, and the judgment and order denying the motion for a new trial, made on the minutes, should be affirmed, with costs. All concur.

---

### HASTINGS v. McDONOUGH.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. DEEDS—INTERPRETATION—MONUMENTS.

 Maps and descriptions in a deed must be interpreted with regard to the monuments found on the ground; and therefore, where the lines of a street on a map referred to in a deed differ from those laid out by the city before the platting of the land, the latter prevail.

2. SAME—CONTRADICTORY DESCRIPTIONS.

 The center line of a pavement is not the center line of the street, so as to control the boundary line of a lot abutting the street, where the paving was done after the deed to the lot was made, and the lines of the street as described differed from those as laid out by the city, though they agreed with the lines laid out in the paving.

Appeal from judgment on report of referee.

Action by Charles R. Hastings against James P. McDonough to recover possession of a strip of land 18 inches in width, together with damages for the wrongful detention thereof. There was a judgment for plaintiff on the opinion of the referee, and defendant appeals. Affirmed.

The opinion of W. H. CUDDEBACK, Esq., to whom the cause was referred to hear and determine, is as follows:

In the year 1883, David R. Morse was the owner of a tract of land lying on the east side of Elmwood avenue and north of Ferry street, in the city of Buffalo. The east line of the land was about 408.5 feet east of Elmwood avenue. In April, 1883, the city laid out Cleveland street, which runs east from Elmwood avenue, through and beyond Morse's land. The southerly line of Cleveland street as thus laid out is 669 feet north of the north line of Ferry street, and parallel therewith. In the year 1884, Morse plotted the said land owned by him, and Marsden Davy, a surveyor, made a map thereof, which was filed in the Erie county clerk's office September 20, 1884, under Map Cover 220. By deed dated September 19, 1884, Morse conveyed lot fifty-eight (58) on Davy's map, and by divers mesne conveyances the plaintiff, on July 1, 1890, became the owner of the lot. By deed dated October 1, 1884, Morse conveyed lot fifty-seven (57) on said map, and the defendant obtained title thereto through divers mesne conveyances on October 19, 1894. Lot fifty-eight (58) is described in the deed from Morse as being thirty-eight (38) feet front, with its northerly line one hundred and forty-eight (148) feet south of the southerly line of Cleveland street; and lot fifty-seven (57) is described in the deed from Morse as being thirty-seven (37) feet front, with its northerly line 111 feet south of the southerly line of Cleveland street. Lot number fifty-eight (58) adjoins lot number fifty-seven (57) on the north. The complaint in this action is that the defendant has built a house on his lot fifty-seven (57), which encroaches on the plaintiff's lot about sixteen (16) inches. The controversy between the parties turns on the location of the south line of Cleveland street. As has been said, the city laid out Cleveland street 669 feet north of Ferry street, and parallel therewith. The plaintiff contends that all measurements should be taken from the line thus established. The defendant contends that the map made by Davy shows the south line of Cleveland street to be but 667.62 feet north of Ferry street, and, inasmuch as the conveyances from Morse, and the plaintiff's complaint, make a special reference to this map, the line lo-

cated by it should govern. I have reached the conclusion that the plaintiff's claims in regard to the south line of Cleveland street should prevail. When the deeds from Morse were executed and the map was made, Cleveland street had been established, and its lines were matters of public record. It must be held that the deeds and map were made with regard to these lines, which are monuments of a high order, unless a contrary intention appears. I do not think that the descriptions in the deeds or the lines on the map, when properly interpreted, show a contrary intention, or justify a different conclusion. In arriving at this decision, I reject the testimony offered to show that this map was merely a preliminary survey submitted to Mr. Morse for his approval. That may have been the surveyor's idea, but the owner and his grantees evidently had a different notion. The map and deeds were made at about the same time, and the map was filed at about the same time the deeds were recorded. I have no doubt that the description of the lots conveyed was taken from this map, which is very particularly mentioned in the deeds.

The argument of the defendant is that any person seeking to locate lots fifty-seven and fifty-eight, as conveyed by Morse, and as described in the complaint, might properly turn to the map, and follow solely the information there obtained. Assuming this to be so, what does the map show? On referring to the map it will be found that it shows the distance from Ferry street to Cleveland street on a line 408.5 feet east of Elmwood avenue, which was the east line of Morse's land, to be 667.62 feet. It also shows certain subdivision lots on Elmwood avenue between Ferry street and Cleveland street. The aggregate of the frontages of these subdivision lots on Elmwood avenue is six hundred and sixty-nine (669) feet. The frontage of one of these subdivision lots (58) is given as "a.38." The defendant attached considerable importance to the fact that the frontage of this subdivision lot is given as indicated, and contends that it is indefinite, and therefore the aggregate of the frontage of the subdivision lots should not be taken as the distance between Ferry street and Cleveland street on Elmwood avenue. But the "a.38," simply means that the lot is "about" thirty-eight (38) feet front. I think that must be taken as its true width, unless it is found to be in conflict with measurements from well-established monuments existing upon the ground platted. There are no figures upon the map to show the distance between Ferry street and Cleveland street other than those above mentioned. Neither does the map show that Ferry street and Cleveland street are parallel. A person, therefore, examining the map, would not be warranted in assuming that Cleveland street is but 667.62 feet from Ferry street on the line of Elmwood avenue, because that is the distance between the streets 408.5 feet further east. On the contrary, the aggregate of the frontage of the subdivision lots fronting on Elmwood avenue would show the distance there between Ferry street and Cleveland street to be 669 feet.

I regard as unsound the argument of the defendant that he had the right to depend solely on the map referred to in the deeds from Morse to locate the line of his lot, or that I, as referee, should blindly follow the map in deciding the case. Maps and descriptions in deeds must be interpreted with regard to the monuments found upon the ground, when it is sought to apply them to the land to which they relate. But, following this map as closely as may be, it does not indicate any intention of the parties to the conveyances, or of the plaintiff in this complaint, to disregard the line of Cleveland street as an existing highway, and to recognize an imaginary street line 16 inches further south. It was proved on the trial of the action that after the conveyances by Morse the city paved Cleveland street, and located the center line of the pavement about 16 inches south of the center line of the street, as the street was laid out in 1883. The defendant regards this fact as strong evidence in his favor. But it is a condition of things that did not exist at the time of the execution and delivery of the deeds by Morse, or at the time the map was made by Davy, and I do not see how it is of much importance in construing those deeds, or in locating the lines on the map. Why the city laid the center line of the pavement south of the center line of the street does not appear. Whether it was done intentionally, or through mistake of the engineer who set the stakes for the pavement, is not shown. But certainly the city might lay the pavement wherever it chose, so long as it kept within the street line; and I know of no rule of law which makes the center line of the pavement the center line of the street in which it is laid. I believe, however, that the

defendant in this action was led to erect his house over the south line of his lot because the surveyor employed by him assumed that the center line of the pavement in Cleveland street was the center line of the street, and on that assumption located the south line of the defendant's lot 16 inches out of the way.

On the trial of the action I understood that, if the plaintiff's claim as to the location of the south line of Cleveland street was allowed, it would throw out of line the fence erected by the owners of the lots lying between the defendant's lot and Cleveland street. If that were so, I might hesitate before rendering a decision that would disturb a monument or boundary line that had been taken and regarded as correct by so many people. But I find on more careful examination of the map (defendant's Exhibit 1) that the fences of the lot owners between the defendant's lot and Cleveland street were erected with reference to the true line of Cleveland street as laid out by the city, or very nearly so, and that my understanding of the facts in that regard at the time of trial was erroneous.

Findings may be settled in accordance with this decision at any time.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Kenefick & Love (Wm. H. Love, of counsel), for appellant.

Duckwitz, Thayer & Jackson (Wallace Thayer, of counsel), for respondent.

PER CURIAM. Judgment and order on the opinion of the referee, with costs.

---

(13 App. Div. 600.)

VILLAGE OF CANANDAIGUA v. BENEDICT et al.

(Supreme Court, Appellate Division, Fourth Department. February 9, 1897.)

APPEAL—DISMISSAL OF PROCEEDINGS—PARTY AGGRIEVED.
    A defendant is not aggrieved by a judgment dismissing the proceedings without prejudice to the plaintiff's right to begin other proceedings, since Code Civ. Proc. § 1209, provides that a final judgment dismissing the complaint does not prevent a new action unless it appears by the judgment roll that it was rendered "on the merits."

Appeal from judgment on report of referee.

Action by the village of Canandaigua, by Charles F. Robertson and others, constituting the board of water commissioners of said village, against Robert M. Benedict, impleaded, for condemnation. From "so much of the judgment duly entered herein in the office of the clerk of the county of Ontario on the 3d day of September, 1896, as determines that the map filed by the plaintiff board of water commissioners is a substantial compliance with the statute, and that the construction, operation, and maintenance of the aforesaid pole line is authorized by the statute, and the plaintiff will have the right to construct, operate, and maintain the same upon taking proper proceedings to acquire the defendant's land therefor, or such interest therein as may be necessary,"—defendant appeals. Dismissed.

In the year 1895 the board of water commissioners of the village of Canandaigua adopted a plan for supplying the village and its inhabitants with water, under the provisions of chapter 181 of the Laws of 1875. The plan contemplated the erection of a power house at the foot of Main street, in said village, near the foot of the lake; the construction of a reservoir on the west side of the lake, about 3,500 feet from the lake, and a pump house on the lake shore, the reservoir and